[Civ. No. 22383.   Second Dist., Div. One.   Nov. 21, 1957.]

THOMAS F. FRAZIER, Respondent, v. UNION PACIFIC
RAILROAD COMPANY (a Corporation), Appellant.

E. E. Bennett, Edward C. Renwick, Malcolm Davis and Jack W. Crumley for Appellant.

Maury, Larsen & Hunt and George R. Maury for Respondent.

DORAN, J.—Plaintiff, a truck driver for the American Pipe and Construction Company, recovered a verdict and judgment against the appellant railroad, in the amount of $60,000, for personal injuries sustained in a collision between truck and train. The accident occurred at the grade crossing of Artesia Boulevard in Long Beach, about 11 a. m. on September 2, 1954. At that time respondent was driving a Sterling Truck Tractor and trailer, loaded with a piece of concrete pipe 16 feet long and 9 feet in diameter. The truck equipment and load weighed some 45 tons, and the overall length was about 60 feet; defendant's train consisted of an engine pulling 19 cars and a caboose. The view of both truck driver and train crew at the crossing was obstructed by buildings of the Mastic Tile Company.

On the day of the collision the crossing was guarded by a so-called "advance warning" sign about 325-350 feet west of the crossing, and by two "flasher signals," a horizontal sign stating "STOP ON RED SIGNAL," and a St. Andrews cross stating "Railroad Crossing." When a train entered the circuit for the signals, the lights would flash alternately. The operation of these signals, and the sounding of any train bell, whistle or horn, were subjects of considerable conflict. Respondent truck driver saw no signals flashing when approaching and slowing down for the crossing, and although familiar with this crossing, had never seen either of the flasher signals working. The respondent heard no bell, whistle or horn.

Upon reaching a point about 60 feet west of the track, respondent first observed the approaching train, immediately applied the brakes, and turned left in an attempt to avoid the collision. The truck slowed down quickly but the oncoming train twice hit the cab in which plaintiff was driving. The train and the truck-trailer combination collided with such force as to derail the locomotive and several box cars; the tractor part of the truck-trailer ended up under the locomo-

tive in a ditch. Plaintiff was thrown clear but sustained serious and permanent injuries.

On the question of extent of the injury, respondent produced two orthopedic surgeons, namely, Dr. Durnin, who had treated respondent from the day of the accident to February 23, 1955; and Dr. Billig who took over the case in January, 1955. Dr. Billig had respondent return 65 times for treatment, and at the time of trial this treatment was still continuing.

Mr. Frazier sustained injuries to head, jaw, chest, shoulders, spine, pelvis, forearm, fractured ribs, and fractures involving the pelvic bone and left hip socket. The conclusion was that the injuries are permanent, that the back and hip joint are deformed, and that the injuries would necessitate a change to a sedentary occupation. There was evidence that respondent's earnings approximated $7,000 per year before injury, but that since the injury respondent had not been able to earn more than about $300 per month, and that only sporadically. Mr. Frazier's life expectancy was 32½ years.

As hereinbefore indicated, a jury returned a verdict in favor of the respondent in the sum of $60,000; defendant moved for a new trial, asking "the trial court to use its independent judgment as a thirteenth juror with particular emphasis on the contributory negligence of the plaintiff, which defendant feels it proved so convincingly, and on the question of the amount of the damages."

It is appellant's contention that "The trial court abused its discretion in denying appellant's motion for new trial," in its ruling on sufficiency of evidence in respect to liability and damages; that plaintiff "was guilty of contributory negligence as a matter of law"; that "The trial court committed prejudicial error in its instructions to the jury," and that "there has been a flagrant miscarriage of justice in this case."

In part, appellant's argument is based upon an assumption that the trial court did consider the verdict excessive, and that, as respondent's brief states, "if the trial judge had had a different concept of the law, he would have ordered remission of an excess." Neither of these suppositions is borne out by the record.

At the hearing of appellant's motion for a new trial the trial judge said: "You have uncontradicted evidence as to the element of special damages, and insofar as the amount of the verdict is concerned I must confess that I was surprised;

I was not shocked." . . . I feel that there is substantial evidence of negligence on the part of the Union Pacific employees, and I figured out in my chambers that if you considered that he has, according to what his own testimony has been, been capable of earning $300 a month; that is $3600—roughly half of what he previously earned—and if you take his loss of earnings and extend them over a 32-year period that is a substantial chunk of money in itself, not considering the personal injuries which he unquestionably has and not considering the pain and suffering which it seems he will undergo indefinitely because of the injury to his spine and to his pelvic region."

There is nothing to indicate that the trial court was in any manner shocked by the verdict, nor that it was disapproved. That the judge may have been "surprised" at the verdict has no bearing on the matter. Moreover, the record indicates that before arriving at the decision to deny a new trial, the judge carefully reviewed the evidence: "I read over my notes very carefully concerning the testimony at the trial." In so ruling, the judge undoubtedly had in mind the rule expressed in 20 California Jurisprudence 101, that "A new trial may not be granted merely because the verdict seems large, or because it is larger than the court, if sitting as a jury, would have given, but only where it appears that it was 'given under the influence of passion or prejudice.' "

Appellant's claim that plaintiff was guilty of contributory negligence as a matter of law, cannot be sustained.

In *Loftus* v. *Pacific Electric Ry. Co.*, 166 Cal. 464, 467 [137 P. 34], quoted in *Lloyd* v. *Southern Pacific Co.*, 111 Cal. App.2d 626, 633 [245 P.2d 583], the applicable rule is expressed as follows: "Ordinarily, of course, the question whether a plaintiff has been guilty of contributory negligence is one of fact for the jury. It becomes a question of law for the court only when the facts are undisputed, and, even then, only where, on those facts, reasonable minds can draw but one conclusion on the issue of plaintiff's negligence. . . . 'It has often been said by this court that it is very rare that a set of circumstances is presented which enables a court to say, as a matter of law, that negligence has been shown. As a general rule, it is a question of fact for the jury . . . (*Seller* v. *Market St. Ry. Co.*, 139 Cal. 268, 271 [72 P. 1006].)' "

As hereinbefore indicated, the present record discloses a conflict of evidence on the question whether the crossing signal lights were operating, and the sounding of any warning of the approaching train. There was evidence that

respondent was properly operating the truck, applied the brakes immediately upon observing the train, and attempted to avoid the collision by turning the truck. Appellant's contention that "the evidence established that the plaintiff did not hear what he should have heard, and apparently did not even listen for the whistle," is not persuasive. Such matters were for the jury to decide after considering the evidence; this, indeed is the very function of a jury. Certainly the trial court's action in refusing to interfere with the verdict rendered cannot be deemed an abuse of discretion.

■ No reversible error appears in respect to the court's instructions to the jury, when considered as an entirety and in respect to the evidence presented. Appellant claims that "It was error to instruct on part of Public Utilities Code, Section 7604, and to omit an applicable part." The part stricken out of the requested instruction related to a locomotive engaged in switching operations. No switching operations were being carried on at the time in question, and that portion of the instruction dealing with switching was not germane to the facts as developed in the course of the trial. Although the train crew may have expected that the nearby Mastic Tile Company would require switching operations, such was not the case.

■ Appellant's complaint that in the instructions, "the jury was specifically told to include future medical expenses in their award," and that the judge thereby invaded the jury's province, is not borne out by the record. As pointed out in respondent's brief, the instruction carefully postulates, "If, under the court's instructions, you should find that plaintiff is entitled to a verdict, you shall determine each of the items of claimed detriment which I am about to mention, provided that you find it to have been suffered by him," etc. The jury was also told that "whether or not you may award him any sum for future detriment will depend on whether or not you find from the evidence that such detriment is reasonably certain to be suffered."

The record indicates that the defendant was accorded a full and fair trial of all pertinent issues, that the verdict finds ample support in the evidence, and that the instructions were adequate. The assertion that there has been a flagrant miscarriage of justice is found untenable.

The judgment is affirmed.

White, P. J., and Fourt, J., concurred.